1  KARA K. UEDA, Bar No. 210044
   kara.ueda@bbklaw.com
2  Best Best & Krieger LLP
   400 Capitol Mall, Suite 1650
3  Sacramento, CA 95814
   Telephone: (916) 325-4000
4  Facsimile: (916) 325-4010

5  Attorneys for Plaintiff
   Steven Calvert
6

7

8                  UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 | STEVEN CALVERT,                          | Case No. 2:06-CV-01564 DAD

12 |            Plaintiff,                     | **STIPULATION AND ORDER FOR VOLUNTARY DISMISSAL WITH**

13 | v.                                        | **PREJUDICE**

14 | CITY OF ISLETON, CITY COUNCIL OF          | [Federal Rule of Civil Procedure 41(a)(1)(ii)]
   | THE CITY OF ISLETON, JIM MILLER,
15 | STEVEN ROSENTHAL, DEL VALLE
   | CAPITAL CORPORATION, INC.,
16 | RONALD SWEPSTON, and DOES 1
   | through 20, inclusive,
17 |
   |            Defendant.
18

19

20

21

22

23

24

25

26

27

28

1       The parties to the above-captioned matter, by and through their respective counsel of

2 record, hereby stipulate that the matter as to all remaining parties be, and hereby is, dismissed,

3 with prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).

4 Dated: June _23_, 2011              BEST BEST & KRIEGER LLP

5

6                                By: /s/ Kara K. Ueda

7                                  KARA K. UEDA
                                 Attorneys for Plaintiff

8                                  Steven Calvert

9 Dated: June _27_, 2011              CITY OF ISLETON

10                                By: /s/ David J. Larsen

11                                DAVID J. LARSEN
                               Attorneys for Respondent

12                                City of Isleton

13 Dated: June _23_, 2011              RON SWEPSTON

14

15                                By:/s/ Ron Swepston
                                       IN PRO PER

16

17

18                              **ORDER**

19       Good cause appearing, IT IS HEREBY ORDERED that the parties' Stipulation for

20 Voluntary Dismissal with Prejudice as to all remaining parties is approved in accordance with the

21 parties' Settlement Agreement and Release, a copy of which is attached hereto. The Clerk of the

22 Court is directed to close this case.

23 DATED: July 8, 2011

24                            _Dale A. Drozd_

25                           DALE A. DROZD
                          UNITED STATES MAGISTRATE JUDGE

26

27 orders.consent\calvert1564.stipord.voldism

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
400 CAPITOL MALL, SUITE 1650
SACRAMENTO, CA 95814

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter referred to as the "Agreement") is entered into between Plaintiff Steven Calvert, an individual who owns certain real property with a street address of 205 Second Street in Isleton, California ("Calvert"), Defendants City of Isleton and City Council of the City of Isleton (collectively "Isleton"), and Defendant Ronald Swepston, an individual who owns certain real property with a street address of 204 Second Street in Isleton, California ("Swepston"). This Agreement is entered into in full and complete settlement of the lawsuit entitled *Steven Calvert v. City of Isleton et al.*, Case No. 2:06-CV-01564 CFL DAD, currently pending in the United States District Court for the Eastern District of California, and in full and complete settlement of the cross-complaint filed by Swepston against Calvert and Isleton and in full and complete settlement of the counterclaim filed by Isleton against Calvert, on the terms set forth below and without any admission of liability. Calvert, Isleton, and Swepston are sometimes referred to herein individually as a "Party" and collectively as the "Parties."

### RECITALS

WHEREAS, Calvert filed a verified amended complaint against Isleton and Swepston, along with other defendants, in the California Superior Court for the County of Sacramento on June 13, 2006 (the "Calvert Lawsuit"); and

WHEREAS, the Calvert Lawsuit alleges, among other things, that City permitted Swepston to install, without Calvert's permission, a sewer line running from Swepston's property ("Sewer Line") through and under Calvert's property to connect into an existing sewer line running under Calvert's property and that a "sleeper line" was also installed under Calvert's property ("Sleeper Line"), without Calvert's permission, by Swepston and/or the Del Valle Capital Corporation (a defendant who has been dismissed from the Calvert Lawsuit following a separate settlement); and

WHEREAS, Isleton removed the Calvert Lawsuit to the United States District Court for the Eastern District of California on July 13, 2006; and

WHEREAS, Swepston filed a cross-complaint against Calvert and Isleton alleging private eminent domain and equitable indemnity (the "Swepston Lawsuit"); and

WHEREAS, the court granted Calvert's motion to dismiss Swepston's cross-claims against Calvert; and

WHEREAS, City filed a counterclaim against Calvert on October 15, 2007 (the "City Lawsuit") for quiet title and injunctive relief; and

WHEREAS, the parties now desire to settle the Calvert Lawsuit, the Swepston Lawsuit, and the City Lawsuit on the terms set forth in this Agreement.

1

## AGREEMENT

NOW THEREFORE, in consideration of the execution of this Agreement, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and subject to the terms and conditions hereof, the Parties hereby agree as follows:

1.      Description of Lawsuits. The Calvert Lawsuit is a complaint for declaratory relief, quiet title, trespass, private nuisance, intentional infliction of emotional distress, negligent infliction of emotional distress, unjust enrichment, injunctive relief, violation of federal civil rights, and inverse condemnation arising out of the installation of sewer lines under Calvert's property. Swepston's Lawsuit alleges private eminent domain and equitable indemnity against Isleton. City's Lawsuit seeks to quiet title and to obtain injunctive relief against Calvert.

2.      Desire to Settle. The Parties desire to settle their claims, controversies, and disputes arising out of the facts and circumstances which are the subject of the Lawsuit.

3.      Consideration. As consideration for this Agreement, the Parties agree as follows:

A.      Sewer Lines. The City has attempted to relocate the Sewer Line under Calvert's property and has been unsuccessful at obtaining the permission of various regulatory agencies to do so because of the overlap of Calvert's property, Swepston's property, and the levee. The Parties, thus, understand that it is not possible at the moment for the City to remove and reroute the Sewer Line that currently runs under Calvert's property and agree to leave them as is for the time being. The parties understand and agree that the current situation is not intended to be permanent and that Calvert continues to object to the existence of the Sewer Line under his property. The City agrees to remove the Sleeper Line within forty-five (45) days from the date the last party to this Agreement executes it. .

B.      Potential Relocation. The parties also understand that at some point in the future, a local, state, or federal agency may need to work in, on, under, or around the levee that separates Calvert's property from Swepston's property. If and when a local, state, or federal agency determines that work will be done in, on, under, or around such levee, the City agrees to take lead responsibility in working with such agencies in rerouting the Sewer Line around Calvert's property. This paragraph does not apply to minor construction or earth moving projects, such as landscaping, and is intended to apply to major construction such as levee improvement projects.

C.      Maintenance in the Interim. Prior to the relocation of the Sewer Line, if the Sewer Line breaks or is otherwise in need of maintenance, City shall have sole responsibility at its sole cost and expense, for repairing the break and reimbursing Calvert for the payment of all applicable fines and penalties. City shall also maintain the sewer line that runs from Swepston's property line to the City's wastewater treatment plant.

D.      Dismissal. Calvert shall promptly dismiss the Calvert Lawsuit in its entirety, with prejudice, following execution of this Agreement by the Parties. Swepston shall promptly dismiss the Swepston Lawsuit in its entirety, with prejudice, following execution of this Agreement

2

82669.00001\5878475.5



by all parties. In connection with the dismissals, the Parties' attorneys are hereby expressly authorized and instructed to execute and provide to other counsel all documents necessary to cause dismissal. All Parties agree to execute any and all documents reasonably necessary to effectuate the terms, conditions, and purposes of this Agreement. In addition, City agrees to prepare the dismissal for Swepston.

        E.   Waiver of Costs and Fees. All Parties agree to waive any and all costs of suit and any claim for attorney's fees as to other Parties.

        4.   Release of Claims. As further consideration for this Agreement and except as to such rights or obligations as may be created by this Agreement, the Parties and each of their assigns, successors, predecessors, sureties, insurers, partners, employees, agents, representatives, attorneys, administrators, executors, and all other persons or entities claiming through them (hereinafter referred to as "Releasing Parties") hereby mutually release and forever discharge the other Parties and each of their respective present and former assigns, successors, predecessors, sureties, insurers, partners, employees, agents, representatives, attorneys, administrators, executors, and all other persons or entities claiming through them (the "Released Parties") from all claims (as defined herein), demands, actions, and causes of action of any nature whatsoever, which are currently known regarding the matters that are the subject of this Agreement and the Lawsuit, as well as to all claims, demands, actions, and causes of action that the Petitioner does not know or suspect to exist in its favor as of the date of this Agreement with respect to matters that are the subject of the Lawsuit, which, if known at the time of executing this Agreement, might have affected the Agreement as set forth herein. For purposes of this Agreement, claims shall mean (a) the Lawsuit; (b) the bringing, prosecution, defense, negotiation, or settlement of the Lawsuit; (c) any and all federal causes of action, including statutory causes of action relating to the same set of operative facts as that of the Lawsuit; and (d) any and all administrative remedies available from any administrative agency relating to the same set of operative facts as that of the Lawsuit (hereinafter referred to as "Claims").

        5.   Covenant Not to Sue and Warranty. In further consideration for this Agreement, each Releasing Party agrees and warrants that it, or anyone claiming through it, will never, individually or with any person, cause, permit, or materially aid in the commencement or prosecution against a Released Party concerning any action or other proceeding based upon any claim that is the subject of the Lawsuit.

        6.   Waiver of Claims. In further consideration for this Agreement, it is understood and agreed that the Releasing Parties knowingly and expressly waive all rights under Section 1542 of the California Civil Code which states:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known to him or her must have materially affected his or her settlement with the debtor.

3

82669.00001\5878475.5

The Releasing Parties represent and warrant that they have been advised by their respective attorneys of the meaning of Section 1542 of the California Civil Code, and of the implications of waiving the protections thereof.

7.     Exceptions to Release.  Nothing herein shall be construed as a release by any Party of any obligation or claim arising out of a breach of this Agreement.

8.     Warranty of Non-Assignment of Claims.  As further consideration for this Agreement, the Releasing Parties warrant and herein represent that they are not aware of any other person or entity that had or has or claims any interest in the Lawsuit or Claims, that the signatory(ies) below, on behalf of the Releasing Parties, has the sole right and exclusive authority to execute this Agreement; and that Releasing Parties have the sole right to receive the consideration given therefor; and that Releasing Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any Claim relating to any matter covered by this Agreement.

9.     Warranty of Authority.  Each individual signing this Agreement represents and warrants that he or she has the power and authority to bind the entity or individual on behalf of whom he or she is signing.

10.    Indemnification.  As further consideration for this Agreement, Releasing Parties agree to hold harmless, indemnify, and defend the Releasees for any and all claims, demands, liens, attorneys' fees, costs of defense, damages, actions, causes of action or suits, of any kind or character, arising out of or flowing from either the Claims or a breach of a warranty given herein, as such may be caused solely by Releasing Parties following dismissal of the Lawsuit.  Furthermore, the Parties agree that, if any assignment or transfer, or any purported assignment or transfer of any of the claims, controversies, rights, promises, debts, liabilities, demands, obligations, costs, expenses, actions, or causes of action released herein has been made, the Party that made or purported to make such transfer or assignment shall indemnify and forever hold the other Parties harmless against all claims and liabilities, including reasonable attorneys' fees and costs incurred in connection therewith, which may be asserted by any third party relating to the subject matter of the assignment or transfer, or any purported assignment or transfer.

11.    Advice of Counsel.  Each Party has either been represented by the attorney of that Party's choice with respect to the matters which are the subject of this Agreement or has chosen not to seek representation.  Each party is aware of the content and legal effect of this Agreement.

12.    No Admission of Liability.  It is understood, agreed, and acknowledged by the Parties that this Agreement is executed as a compromise of disputed claims and that the terms of this Agreement are not to be construed as an admission of liability on the part of any Party.  This Agreement is entered into solely for the purpose of settling pending litigation.  The terms of this Agreement shall not be admissible in any arbitration, litigation, or other proceedings for any purpose, except as required to enforce this Agreement.

13.    Cooperation.  All Parties agree to cooperate fully in executing any and all further

4

82669.00001\5878475.5



documents and taking any additional action which may be necessary or appropriate to carry out the intent of and give full force and effect to this Agreement.

14.    Duplicate Originals and Counterparts. This Agreement shall be executed in duplicate originals, with each party to retain a fully-executed duplicate original. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all such counterparts shall together constitute but one and the same document. Facsimile signatures shall be considered as binding as original signatures.

15.    California Law. This Agreement shall be construed and enforced pursuant to the laws of the State of California. This document shall not presumptively be construed against any party preparing it.

16.    No Undisclosed Principals. Each of the Parties represents and warrants to the other Parties that no other person, firm, corporation, estate, or entity has had or now has any interest in any of the Claims released herein.

17.    Written Modifications Only. The terms of this Agreement shall not be modified or amended except in writing, signed by all parties or their designated representatives for such purpose.

18.    Integrated Agreement. It is understood and agreed that this Agreement contains the entire agreement between the Parties. The terms of this Agreement comprise the final expression of the understanding of the Parties with respect to its terms, and the terms may not be contradicted by evidence of any prior or contemporaneous agreement. The Parties further understand, agree, and intend that the Agreement will constitute the complete and exclusive statement of its terms and that no extrinsic evidence, whatsoever, may be introduced to vary the terms of this Agreement in any proceeding involving the Agreement. This Agreement comprises a completely integrated contract.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

5

19.   <u>Effective Date</u>.   This Agreement shall become effective immediately following execution by all of the Parties, on the latest date appearing below.

IN WITNESS WHEREOF, the parties hereto have executed this Settlement Agreement and Release as follows:

**STEPHEN CALVERT**

"Calvert"

**CITY OF ISLETON**

By: _Bruce D Pope_

Name: _Bruce A. Pope_
Its: _City Manager_

"Isleton"

**APPROVED AS TO FORM:**

By: _____

Name: _DAVE   LARSEN_
Its: _ATTY_

**RONALD SWEPSTON**   6-27-11

"Swepston"

6